542 S.E.2d 780

**Diation Lamonte LANGHORNE, s/k/a Diatiation Langhorne**

v.

**COMMONWEALTH of Virginia.**

**Record No. 2124–99–2.**

Court of Appeals of Virginia,
Richmond.

March 6, 2001.

20

Shanon S. Echols (Law Offices of J. Benjamin Dick, on brief), Charlottesville, for appellant.

Michael T. Judge, Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: HUMPHREYS and CLEMENTS, JJ., and COLEMAN, Senior Judge.

HUMPHREYS, Judge.

Diation Lamonte Langhorne appeals an order of the Circuit Court of the County of Fluvanna finding that he violated the terms of his probationary sentence. For the reasons that follow, we reverse the court's order.

## I. Background

On April 21, 1995, a petition was issued charging Langhorne with malicious wounding, in violation of Code § 18.2–51. Langhorne was born on August 27, 1977. Thus, he was a juvenile at the time of the offense, which occurred on April 19, 1995. The petition listed the address for Ruth Langhorne, Langhorne's mother, but cited the address for Richard Langhorne, Langhorne's father, as "unknown."

On April 25, 1995, Langhorne appeared before the juvenile and domestic relations district court for a preliminary intake/detention hearing. Langhorne's mother was not present during the hearing. However, the record of the proceedings states that Mrs. Langhorne was notified of the April 25, 1995 hearing "on 4–25–95 at 7:00 a.m." Langhorne's father was also not present at the hearing. There is no record that Mr. Langhorne was notified of the hearing, nor does the record indicate that either party was issued a summons. During the hearing, counsel was appointed for Langhorne and a detention hearing was scheduled for April 26, 1995.

On April 26, 1995, Mrs. Langhorne was present, along with court-appointed counsel. However, Mr. Langhorne was not present. The record does not disclose the manner in which Mrs. Langhorne was notified of this hearing, nor does the record contain a reference that an attempt was made to notify Mr. Langhorne of the hearing. As a result of the hearing, the judge found probable cause to detain Langhorne, placed him in the "Community Attention Home," and scheduled the adjudicatory hearing for May 17, 1995.

Mrs. Langhorne was subpoenaed for the May 17, 1995 hearing by Langhorne's counsel. There is no record that Mr. Langhorne was notified of the hearing by either party. At the

hearing, the Commonwealth served a "Notice of Intent to Transfer" on Langhorne's counsel, notifying Langhorne of its intent to transfer the matter to circuit court. As a result, the judge scheduled a transfer hearing for June 14, 1995. He also released Langhorne from detention and placed him on house arrest.

On June 9, 1995, a probation officer with the Department of Youth & Family Services filed a data sheet for the transfer report. The data sheet listed Mr. Langhorne's address as "unknown." It listed the appropriate contact information for Ruth Langhorne. The record does not reveal that either parent was notified of the June 14, 1995 transfer hearing.

At the transfer hearing, Mrs. Langhorne was present, along with court-appointed counsel and witnesses. Mr. Langhorne was not present. The judge found probable cause, granted the Commonwealth's motion to transfer, and revoked Langhorne's bond.

On June 26, 1995, the grand jury indicted Langhorne for malicious wounding. Thereafter, Langhorne entered into a plea agreement with the Commonwealth wherein he agreed to plead guilty in return for the imposition of a twenty-year sentence that would be suspended if he was admitted into the boot camp incarceration program. In the event he was not admitted to the program, the agreement provided that an active sentence of sixteen months would be imposed. The court accepted this agreement on August 18, 1995. Langhorne was ultimately not accepted into the boot camp incarceration program and was sentenced in accordance with the plea agreement.

On November 17, 1995, the circuit court modified its sentencing order by suspending the balance of any active sentence as of January 18, 1996. This modification was conditioned upon Langhorne's good behavior and agreement to violate none of the penal laws of the Commonwealth of Virginia, or any other jurisdiction, for a period of twenty years from his date of release.

On June 1, 1999, Langhorne's supervising probation officer informed the court that Langhorne had been found guilty, by a federal court, of distribution of cocaine and sentenced to 145 months imprisonment. In response, the circuit court issued a capias and held a probation violation hearing on July 29, 1999. At the hearing, the court found Langhorne guilty of violating the terms and conditions of his probation and revoked the suspended eighteen years and eight months of his earlier sentence. It then resuspended sixteen years of that remaining sentence and ordered that the balance of the sentence run consecutive to his federal sentence. It is this order of the circuit court that Langhorne now appeals.

Langhorne claims that the Commonwealth failed to provide the appropriate notice to Langhorne's mother and father during the juvenile proceedings. Langhorne argues that the Commonwealth's failure renders his original conviction in the circuit court void; thus rendering the subsequent order of the court revoking the suspended sentence also void.

Langhorne admits he did not object to the lack of notice during the juvenile court proceedings, the circuit court proceedings, or the probation violation hearing. However, he claims that because his contention involves a question of "subject matter jurisdiction," it cannot be waived.

## II. Analysis

It is axiomatic that "subject matter jurisdiction" is granted only by constitution or statute. Our Supreme Court has stated that "[i]t cannot be waived and any judgment rendered without it is void *ab initio*. Moreover, lack of subject matter jurisdiction 'may be raised at any time, in any manner, before any court, or by the court itself.'" *David Moore v. Commonwealth,* 259 Va. 431, 437, 527 S.E.2d 406, 409 (2000) (quoting *Humphreys v. Commonwealth,* 186 Va. 765, 772, 43 S.E.2d 890, 894 (1947)).

The term "subject matter jurisdiction" refers to the power granted to the courts by constitution or statute to hear specified classes of cases. Code § 16.1–241 grants the juvenile court "exclusive original jurisdiction" over "all

cases, matters and proceedings" concerning a juvenile who is alleged to have been delinquent. The classes of offenses committed by the defendant are included within this grant of jurisdiction. With certain exceptions that are not pertinent here, Code § 19.2–239 grants the circuit court "exclusive original jurisdiction for the trial of all ... indictments ... for offenses committed within their respective circuits." Indictments for [malicious wounding] ... are encompassed within this statutory grant of authority. Thus, the circuit court also had subject matter jurisdiction over the classes of offenses committed by the defendant.

*Dennis Moore v. Commonwealth,* 259 Va. 405, 409, 527 S.E.2d 415, 417 (2000) (citations omitted).

■ However, "[a] court's authority [whether juvenile or circuit] to *exercise* its subject matter jurisdiction over a case may be restricted by a failure to comply with statutory requirements that are mandatory in nature and, thus, are prerequisite to a court's lawful exercise of that jurisdiction." *Id.* (emphasis added) (citing *Jones v. Commonwealth,* 213 Va. 425, 428, 192 S.E.2d 775, 777 (1972); *Gregory v. Peyton,* 208 Va. 157, 159–60, 156 S.E.2d 624, 626 (1967); *Peyton v. French,* 207 Va. 73, 80, 147 S.E.2d 739, 743 (1966)).

■ The notice provisions contained in the applicable version of Code § 16.1–263 mandate that "[a]fter a petition has been filed, the court shall direct the issuance of summonses ... to the parents ... and such other persons as appear to the court to be proper or necessary parties to the proceedings...."[1] The Supreme Court of Virginia has held that this requirement is "mandatory" and that a juvenile court's failure to adhere to this requirement usurps the court's authority to exercise its subject matter jurisdiction in such instances. *See David Moore,* 259 Va. at 438–39, 527 S.E.2d at 409–10; *Dennis Moore,* 259 Va. at 409, 527 S.E.2d at 417. Furthermore, because the offense committed by Langhorne occurred in

---

1. The 1999 amendments to this statute substituted "at least one parent" for "the parents." Code § 16.1–263; 1999 Va. Acts, c. 952.

1995, Code § 16.1–269.1(E), which provides that "[a]n indictment in the circuit court cures any error or defect in any proceeding held in the juvenile court except with respect to the juvenile's age," does not apply. The Code provision applies only to offenses committed on or after July 1, 1996. *See Carter v. Commonwealth,* 31 Va.App. 393, 394, 523 S.E.2d 544, 545 (2000).

Accordingly, despite Langhorne's guilty plea, the absence of notice to his father, under these facts, rendered the juvenile court powerless to exercise jurisdiction in order to conduct the transfer hearing.[2] Thus, the circuit court's judgment, and later revocation of probation, was void because it lacked authority to exercise subject matter jurisdiction.[3] For these reasons, we reverse the circuit court's order and remand this case to the trial court for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

---

**2.** The record establishes that although Ruth Langhorne was not issued a summons and did not appear at the initial intake hearing, she did appear at all subsequent proceedings, including the June 14, 1995 transfer hearing. Thus, because she had actual notice of the hearings, any departure from the statutory requirement of written notice was a procedural, rather than jurisdictional, defect that "[was] cured or waived by [her] appearance [as a] proper and necessary part[y] and a failure to object to inadequacy of notice." *Turner v. Commonwealth,* 216 Va. 666, 668, 222 S.E.2d 517, 519 (1976); *see also Roach v. Director, Department of Corrections,* 258 Va. 537, 545, 522 S.E.2d 869, 872 (1999).

**3.** The Attorney General correctly points out that a guilty plea waives all defenses, except lack of an offense being charged. *Peyton v. King,* 210 Va. 194, 196–97, 169 S.E.2d 569, 571 (1969). However, this doctrine is applicable only in cases that are "free of jurisdictional defect." *Id.* Such is not the case here.